SARAH J. WALKER, ET AL. v. GEO. W. SMITH, ET AL.

[Abstract Kentucky Law Reporter, Vol. 6—457, 671.]

**Jurisdiction in a Court of Equity.**

In order to give jurisdiction to a court of equity to quiet title the plaintiff must allege both that he has legal title and possession.

**Fraudulent Conveyance.**

A court of equity will not have jurisdiction to set aside a conveyance alleged to be fraudulent and subject the land to the satisfaction of a legal demand unless it is alleged that the petitioner has procured a judgment at law, an execution thereon and a return of nulla bona, or by attachment.

**Waiver of Jurisdiction.**

Where it is sought in a court of equity to set aside a conveyance alleged to be fraudulent and subject the land to a claim, not alleged to have been reduced to judgment, and execution issued and return of nulla bona made, and the defendant does not raise the question of the jurisdiction of the trial court therein, it is too late to raise the question of jurisdiction for the first time in this court.

APPEAL FROM HENDERSON CIRCUIT COURT.

March 14, 1885.

OPINION BY JUDGE HINES:

In 1870 Hicks made a deed to Norment for a tract of land and certain personal property for the recited consideration of eight

thousand dollars. Subsequent to the conveyance appellees obtained a judgment against Hicks, had execution issued, levied upon this land and had it sold under the levy, appellees being the purchasers. Appellees having no deed from the sheriff, brought suit in equity against Hicks and Norment (Hicks being in possession as tenant of Norment) to recover possession of the land, to have their title quieted, and the deed from Hicks to Norment canceled, alleging that the conveyance was void because without consideration and that it was made to cheat, hinder and delay the creditors of Hicks. The court below adjudged that appellees were the owners of the land by their execution purchase, and directed the deed from Hicks to Norment to be canceled. The case is anomalous in that it presents no ground of equitable jurisdiction. It is well established in this state that a court of equity will not entertain jurisdiction to set aside a conveyance alleged to be fraudulent and subject the land to the satisfaction of a legal demand, unless there is an allegation of judgment at law, an execution and return of nulla bona or by attachment under some of the grounds stated in the code. It is also well understood that in order to give jurisdiction to a Court of Equity to quiet title the complainant must allege in himself both possession and the legal title. Notwithstanding this the case proceeded without objection to the jurisdiction, to a final termination. Under this state of fact, as we have held in the case of *Barton v. Barton,* 80 Ky. 213, 3 Ky. L. 746, it is now too late to raise the question of jurisdiction. In that case this court said: "This is unlike a case when the court has no jurisdiction of the subject matter, for in such case no consent can give jurisdiction; but here the court had jurisdiction to adjudge whether a conveyance or transfer of property was fraudulent, provided certain steps had been taken, and a failure to raise the question as to whether such steps had been taken is akin to the submission of the person to the jurisdiction, when there has been no service of process, which may, in all cases be done when the subject matter may otherwise be enquired of by the court."

Appellant's objection to the reading of the certified copies of the judgment, execution and return, which although not filed with the original petition, were filed before the pleadings were completed, is not well taken. In such a case a denial of sufficient knowledge or information to form a belief will not present an issue. The at-

tack must be made directly upon the certified record. 12 Bush 292, 336 and 598. It is prima facie evidence of the facts that it purports to establish.

We will now consider the objection to the introduction of other evidence. In the first consideration of this case an important statement made by the vendor was overlooked. That materially affects our conclusion. The objection arose upon this character of testimony: Appellees called Hicks, the vendor, as a witness and asked him if he had not stated to various persons, naming them, that the land trade between him and Norment was a sham; if he did not say that the money that was pretended to have passed in payment for the land was Confederate money. Hicks denied having made any such statements, but testified as follows:

Did Norment pay you the money in cash? Ans. Yes, sir. How much? Ans. I think it was eight thousand dollars, if I am not mistaken. I refer to my deed. I have even forgotten that. What kind of money did he pay you? Ans. Greenbacks; I think perhaps there was a hundred or two dollars in gold. Was it all in greenbacks except the gold? Ans. I have heard a heap of talk about confederate money, but I acknowledge it all in greenbacks. Was it a bona fide sale? Ans. Yes, sir. Evidence was then introduced to the effect that Hicks had said to the several persons asked about, but not in the presence of Norment, that Norment had paid for the land in confederate money, that the sale was a sham. One of these witnesses testified: "Hicks told me it was a sham trade; that the money paid for it was confederate money; that he had given Norment a pretty considerable amount of it with a few greenback bills laid on the top of it and that was the money Norment paid him." Another witness said: "He (Hicks) said that there had been a sham sale and transfer, and that Norment paid for it in a roll of money, all of which was Confederate money except a few bills on the top that were greenbacks, and he said he had furnished the money to Norment." Several other witnesses were permitted to testify that Hicks had said that the sale was a sham. This contradictory or impeaching testimony is that to which exceptions were taken. Before the adoption of the code a party surprised by the testimony of his own witness was allowed to contradict him only by proving that the fact stated in evidence was different. Under the code there is this additional method of contradiction: When the witness testi-

fies to a fact that is prejudicial to the party calling him, the party may prove by others that the witness had stated the facts to be otherwise. But when the witness does not state facts prejudicial but simply fails to prove facts supposed to be beneficial to the party, he can not be contradicted. Here the witness Hicks states facts prejudicial to appellees in saying the property was paid for in greenbacks and that the trade and sale was bona fide. It was proper to contradict him by the evidence admitted. *Comp v. Commonwealth,* 2 Metc. 18; *Kenedy v. Commonwealth,* 14 Bush 340, and *Loving v. Commonwealth,* 80 Ky. 507.

It is also contended for appellant that Hicks was not a competent witness for any purpose, for to admit him to testify would be to allow him to question and invalidate his own conveyance. This was the rule before the adoption of the law of evidence removing disqualification on account of interest. Under the old rule the vendor could be called in a proceeding to set aside a conveyance for fraud, to sustain the conveyance but not to impeach it. That was on the supposition that the evidence for the vendor was against the interest of the witness. The vendor is now competent but his interest if any may be shown to affect his credibility. What other evidence is there bearing on the question of no consideration? Hicks testifies, being called by appellees, that Norment (who was dead at the trial) paid him eight thousand dollars in greenbacks for the land and personal property as recited in the deed. Two other witnesses testify that they witnessed the execution of the deed in the county, and saw the money given by Norment to Hicks, the amount of which they did not know, as it was not counted in their presence. One of the witnesses states that on an inquiry from him Hicks stated at the time that he did not care to count the money, as he and Norment had counted it and he knew the amount. One of the witnesses states that he was called to witness the payment of the money, and the other that he was called to witness the deed, but they both signed the deed as witnesses. Another witness, the daughter of Norment, testifies that she passed through the hall at the time the deed was being executed and saw a large quantity of greenbacks on the table and that in response to an inquiry from her, Norment said he had bought Hicks' place. Hicks also says that the reason he sold his farm and personal property was that he had lately lost his wife and had determined to go to Texas or

California, which he did not do, and no reason is given for his change of intention. To establish that there was no consideration for the conveyance it is shown that the conveyance covered all the property owned by Hicks; and that he was shortly thereafter known to be insolvent; that Norment was only in moderate circumstances, owning some five hundred acres of land, considerable personal property, and but little cash on hand so far as could be shown by his bank accounts, and his circumstances were such that he could not have borrowed so large a sum of money as eight thousand dollars. It is also shown that Hicks for several of the years since the conveyance to his brother-in-law, Norment, has remained upon the place, paying no rent except in the crops he raised. To account for the money he says was received for the property, Hicks says he lost about four thousand dollars in a farming venture in an adjoining county, and that he has expended the other four thousand dollars without knowing how. The evidence shows that he has been for years dissipated and has expended large sums of money, probably forty thousand dollars in that way, in the last few years. When it is considered that the only direct testimony as to a valid payment in current funds is by Hicks and that he is shown to have stated that the money was confederate money and the whole transaction was a sham, the conclusion from the whole record is that the conveyance was fraudulent and without consideration. The evidence as to Hicks' statements in regard to the kind of money in which the payment was made is considered only as contradictory of Hicks' testimony and not as substantial evidence of no consideration as against Norment who was not present and was dead when the statements were made by Hicks.

Judgment *affirmed*.

*William Lindsay, H. F. Turner,* for appellants.

*Vance & Merritt,* for appellees.